```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF ALABAMA
                        SOUTHERN DIVISION


HILLARY BERNARD BALDWIN,         :

       Petitioner,               :
                                           CIVIL ACTION 09-0713-KD-M
v.                               :
                                         CRIMINAL ACTION 08-00275-KD-M
UNITED STATES OF AMERICA,        :

       Respondent.               :
```

REPORT AND RECOMMENDATION

Pending before the Court is Petitioner's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (Docs. 32-33).  This action was referred to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636(b) and Rule 8(b) of the Rules Governing Section 2255 Cases.  It is now ready for consideration.  The record is adequate to dispose of this matter; no evidentiary hearing is required.  It is recommended that Petitioner's Motion to Vacate (Docs. 32-33) be denied, that this action be dismissed, and that judgment be entered in favor of Respondent, the United States of America, and against Petitioner Hillary Bernard Baldwin.  It is further recommended that it be found that Baldwin is not entitled to a certificate of appealability and, therefore, is not entitled to appeal *in forma pauperis*.

Baldwin was indicted on August 28, 2008, pursuant to a criminal complaint, for conspiracy to possess, with intent to

distribute, cocaine in violation of 21 U.S.C. § 846 (Docs. 1, 12).  On October 21, Petitioner entered into a plea agreement in which Baldwin pled guilty to the indictment (Doc. 21).  On July 17, 2009, Judge DuBose sentenced Petitioner to 180 months on the conviction as well as eight years of supervised release following his release from prison, and an assessment of one hundred dollars (Doc. 30).  Baldwin did not appeal his conviction (*see* Doc. 32, p. 3, ¶ 8).

Petitioner filed his Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 on October 30, 2009 in which he raised the following claims:  (1) His guilty plea was not knowingly and voluntarily made and (2) his attorney rendered ineffective assistance of counsel (Docs. 32-33).  Respondent filed a response on December 30, 2009 (Doc. 35).

Baldwin first claims that his guilty plea was not knowingly and voluntarily made (Doc. 32, p. 4).  Petitioner has more specifically claimed that he did not know that his prior convictions were going to be used to enhance his sentence and that there was no factual basis for the plea (Doc. 33, pp. 2-3, 4-5).  The Eleventh Circuit Court of Appeals, in *U.S. v. Monroe*, 353 F.3d 1346, 1354 (11th Cir. 2003), has given instructions stating that, when a court evaluates a claim by a defendant that his rights have been prejudiced, the court should examine "the

three 'core objectives' of Rule 11,[1] which are: (1) ensuring that the guilty plea is free of coercion; (2) ensuring that the defendant understands the nature of the charges against him; and (3) ensuring that the defendant is aware of the direct consequences of the guilty plea." *Monroe*, 353 F.3d at 1354 (*citing U.S. v. Lejarde-Rada*, 319 F.3d 1288, 1289 (11th Cir. 2003)).

The Court notes first that Respondent has asserted that this claim is procedurally defaulted because it was not raised on direct appeal; more specifically, the argument goes, because Baldwin did not appeal his conviction, he is procedurally barred from raising the claim now unless he satisfies certain requirements (Doc. 35, pp. 10-12). While Respondent may be correct in this assertion, the Court will proceed to the merits of this claim, finding it to be a more expeditious use of time.

To evaluate Baldwin's claim, the Court will first review the course of proceedings surrounding his plea, first noting the following specific statements in his Plea Agreement:

> 3. The defendant understands that the statements he makes under oath in the plea of guilty must be completely truthful and that he can be prosecuted for making false statements or perjury for any false statements he makes intentionally in this plea of guilty.
>
> \*\*\*

---

[1] Fed.R.Crim.P. 11 deals with pleas.

  5. The defendant is not under the influence of alcohol, drugs, or narcotics. He is certain that he is in full possession of his senses and mentally competent to understand this Plea Agreement and the guilty plea hearing which will follow.

  6. The defendant has had the benefit of legal counsel in negotiating this Plea Agreement.  He has discussed the facts of the case with his attorney, and his attorney has explained to the defendant the essential legal elements of the criminal charges which have been brought against him.  The defendant's attorney has also explained to the defendant his understanding of the United States' evidence.

  7. The defendant understands that the United States has the burden of proving each of the legal elements of the criminal charges beyond a reasonable doubt.  The defendant and his counsel have discussed possible defenses to the charges.  The defendant believes that his attorney has represented him faithfully, skillfully, and diligently, and he is completely satisfied with the legal advice of his attorney.

  8. A separate document, entitled Factual Resume, will be submitted to the Court as evidence at the guilty plea hearing. The Factual Resume is incorporated by Reference into this Plea Agreement.  The defendant and the United States agree that the Factual Resume is true and correct.

  9. This plea of guilty is freely and voluntarily made and is not the result of force, threats, promises, or representations apart from those set forth in this Plea Agreement.  There have been no promises from anyone as to the particular sentence that the Court may impose.  The defendant avers that he is pleading guilty because he knows that he is guilty.

PENALTY

>    10.  The maximum penalty the Court could impose as to Count One is:
>
>> a.  A minimum mandatory sentence of 10 years to life without parole;
>
> ***
>
> SENTENCING
>
>    11.  The Court will impose the sentence in this case.  The United States Sentencing Guidelines apply in an advisory manner to this case.  The defendant has reviewed the application of the Guidelines with his attorney and understands that no one can predict with certainty what the sentencing range will be in this case until after a pre-sentence investigation has been completed and the Court has ruled on the results of that investigation.  The defendant understands that at sentencing, the Court may not necessarily sentence the defendant in accordance with the Guidelines. . . .
>
> ***
>
>    13.  The defendant understands that this Plea Agreement does not create any right to be sentenced in accordance with the Sentencing Guidelines, or below or within any particular guideline range, and fully understands that determination of the sentencing range or guideline level, or the actual sentence imposed, is solely the discretion of the Court.

(Doc. 21).  At the bottom of the Agreement is a statement that this agreement is the entire agreement between the U.S. Attorney and Baldwin (Doc. 21, p. 10).  After that, the following statement appears:

>    I have consulted with my counsel and fully understand all my rights with respect

5

> to the offenses charged in the Indictment pending against me. I have read this Plea Agreement and carefully reviewed every part of it with my attorney. I understand this agreement, and I voluntarily agree to it. I hereby stipulate that the Factual Resume, incorporated herein, is true and accurate in every respect, and that had the matter proceeded to trial, the United States could have proved the same beyond a reasonable doubt.

(Doc. 21, pp. 10-11). This is followed by Baldwin's signature (Doc. 21, p. 11), after which appears the following statement by Petitioner's attorney:

> I am the attorney for the defendant. I have fully explained his rights to him with respect to the offenses charged in the Indictment in this matter. I have carefully reviewed every part of this Plea Agreement with him. To my knowledge, his decision to enter into this agreement is an informed and voluntary one. I have carefully reviewed the Factual Resume, incorporated herein, with the defendant and to my knowledge, his decision to stipulate to the facts is an informed, intelligent and voluntary one.

(Doc. 21, p. 11). The Factual Resume which accompanies the Plea Agreement, though lengthy, will be herein set out in full:

> The defendant, HILLARY BERNARD BALDWIN, admits the allegations of Count One of the Indictment.
>
> <u>ELEMENTS OF THE OFFENSE</u>
>
> HILLARY BERNARD BALDWIN, understands that in order to prove a violation of Title 21, United States Code, Section 846, as charged in Count One of the Indictment, the

6

United States must prove that:

> First:   That two or more persons in some way or manner, came to a mutual understanding to try to accomplish a common and unlawful plan, as charged in the indictment; and
>
> Second:  That the Defendant, knowing the unlawful purpose of the plan, willfully joined in it.

### OFFENSE CONDUCT

The defendant, HILLARY BERNARD BALDWIN, admits the United States could prove the following beyond a reasonable doubt:

Prior to July 29th, MCSO Sergeant Paul Burch received information from an informant that "SONNY" and "Jermaine" were making regular trips to Atlanta, Georgia to purchase one to two kilograms of cocaine every few days and bringing the cocaine back to Mobile, Alabama for distribution. On July 27th, Sergeant Burch received a call from the informant that "SONNY" and Jermaine were in Atlanta purchasing three kilograms of cocaine. The morning of July 29th, 2008, Sergeant Burch received information from the informant that the cocaine was being transported to a black and white house on Cawthon Street in Prichard and being converted into crack cocaine. The informant also told Sergeant Burch that a gray four door Dodge Charger was possibly being used to transport the cocaine.

On July 29th, 2008, MCSO Deputy Raylene Busby received a call from an anonymous caller who told her that drugs were coming in from Atlanta that day and that the two men who were in possession of the drugs had just passed through Montgomery, Alabama. The anonymous caller told Deputy Busby that the two men were in a gray Dodge Charger that was an Enterprise Rental Car and that the caller believed that the car had a Mobile County license plate. The anonymous caller stated

that the men would either go to 753 Dr. Thomas Drive or to the white house with black trim located at the corner of Faure Street and Serigny Street once in Mobile.

Deputy Busby asked the anonymous caller if the two men had any prior drug convictions and the anonymous caller replied, "Yes, they do." The anonymous caller told Deputy Busby that the "main one's" name was HILLARY and the other man's name was Jermaine. The anonymous caller told the Deputy that the two men were transporting "about two kilograms" of cocaine.

Deputy Busby relayed this information to Sergeant Burch who determined that HILLARY was possibly HILLARY BERNARD BALDWIN (aka: SONNY). MCSO Deputy Thornton went to the 23.5 mile marker of Interstate 65 and waited for the vehicle. Deputy Thornton later learned that the same anonymous caller had also contacted the Baldwin County Sheriff's Office and Deputy Younce (BCSO) with the drug interdiction unit was dispatched to intercept the Dodge Charger. At Exit 45 and Interstate 65, in Baldwin County, Alabama, Deputy Younce observed a gray Dodge Charger go by southbound on Interstate 65. The Dodge Charger had tinted windows and Deputy Younce could not tell who was driving or how many people were in the vehicle.

Deputy Younce stopped the Dodge Charger at the 37-mile marker on Interstate 65 for the tinted windows and approached the passenger side of the vehicle. After the window was rolled down, Deputy Younce observed that the vehicle was occupied by two males. Deputy Younce asked the driver for his license and the paperwork for the vehicle. The driver, HILLARY BERNARD BALDWIN, handed Deputy Younce the paperwork for the vehicle and Deputy Younce asked BALDWIN to step back to the rear of the car with his driver's license. Deputy Younce walked to the rear of the vehicle and tried to contact backup.

While standing at the rear of the Dodge Charger, Deputy Younce observed BALDWIN looking at him in the rear view mirror. BALDWIN then placed the vehicle into drive

8

and sped away from the traffic stop.  Deputy Younce lost sight of the vehicle as it entered into Mobile County.

Shortly thereafter, MCSO Deputy Bryan Hill observed the Dodge Charger southbound Interstate 65 at a high rate of speed and noted that the vehicle was driving without its headlights on.  Deputy Hill also observed the passenger window was down and that the passenger, later identified as Jermaine Gaillard, was looking over his left shoulder toward the rear of the vehicle.  Deputy Hill advised the waiting units that the Dodge Charger was southbound Interstate 65.  Deputy Hill also observed two Baldwin County Sheriff's units in pursuit of the Dodge Charger.

Deputy Jason Gifford and Deputy Jeff Eiland became the primary pursuit vehicles for the MCSO.  They began the pursuit around the 23-mile marker of Interstate 65 and when the pursuit neared Highway 43, Deputy Johnny Miller deployed a set of stop sticks and was able to spike th left front tire.  As the pursuit neared the 15-mile marker Gaillard threw a kilogram of cocaine from the Dodge Charger striking Deputy Gifford's vehicle.  The pursuit continued onto Interstate 165 and exited onto the Whistler Street exit.  The Dodge Charger continued to travel on the Interstate 165 Service Road and eventually spun out at Bay Bridge Road.

Once the Dodge Charger stopped, BALDWIN and Gaillard jumped from the vehicle and ran.  Gaillard, was observed by Satsuma Police Department Sergeant Brent Guy toss a clearing [sic] plastic bag to the ground toward the rear of the Dodge Charger near a retaining barrier.  The clear plastic bag was later retrieved and contained approximately 40 grams of cocaine.  Gaillard and BALDWIN continued to flee on foot toward the east.  Deputy Gifford was able to take BALDWIN into custody.

Deputy Thornton collected approximately 30 grams of cocaine from the interior of the Dodge Charger.  Deputy Hill recovered a small amount of cocaine from the hood of the Dodge Charger and from the hood of Deputy Gifford's

>        vehicle.  Sergeant Stringer retrieved
>        approximately 68 grams of cocaine on
>        Interstate 65 southbound between Baker Road
>        and Celeste Road.
>             Sergeant Paul Burch read BALDWIN his
>        Miranda rights and BALDWIN acknowledged that
>        he understood his rights by signing a Waiver
>        of Rights form.  BALDWIN told Sergeant Burch
>        that he and Gaillard were traveling to
>        Atlanta and purchasing cocaine from an
>        individual who he identified by name.
>        BALDWIN stated that he and Gaillard purchased
>        nine to twelve ounces of cocaine every few
>        days and that Gaillard had customers waiting
>        on the cocaine when they returned from
>        Atlanta.  BALDWIN stated that he sold cocaine
>        to various individuals "just to pay bills."
>        Sergeant Burch asked BALDWIN how much was
>        thrown from the vehicle and he replied "just
>        a few ounces, we only had $2,200.00."
>             On July 30th, 2008, Deputy Keith Wilson
>        returned to the Dodge Charger at the impound
>        lot and retrieved an additional 14 grams of
>        cocaine form the vehicle.
>             BALDWIN admits that the United States
>        could prove his involvement beyond a
>        reasonable doubt with 4 kilograms of cocaine.
>             BALDWIN admits that his prior drug
>        felony convictions place him in a Career
>        Offender status under the United States
>        Sentencing Guidelines.

(Doc. 21, pp. 12-15).  Petitioner signed and dated the Factual Resume on October 21, 2008 (Doc. 21, p. 15).

At the guilty plea hearing which took place before Judge DuBose, and at which Baldwin and his attorney were present, statements were made that Petitioner was a career offender (Plea Transcript, p. 1, LL. 10-12, 25; p. 2, LL. 1-6).[2]  The main

---

[2]The Guilty Plea Hearing transcript is not part of the Court record but was made available by the Court reporter.

discussion at the hearing was the possible sentence range Baldwin faced (Plea Transcript, pp. 1-2, 4, 8). During the hearing, Judge DuBose had the following colloquy with Petitioner:

> THE COURT: Okay. Mr. Baldwin I have to go through a series of questions to determine whether you are competent to plea an [sic] whether there is a voluntarily [sic] plea. If you will raise your right hand. First of all state your full name.
>
> A.  Hillary Barnard Baldwin
>
> Q.  How old are you?
>
> A.  39.
>
> Q.  How far did you go in school?
>
> A.  All the way to the 12th.
>
> Q.  You can – can you read and write the English language?
>
> A.  Yes, ma'am.
>
> Q.  Had any problem communicating with your attorney?
>
> A.  No, ma'am.
>
> Q.  Are you fully satisfied with his representation and advice to you?
>
> A.  Yes, ma'am.
>
> Q.  Have you ever been treated for any type of mental illness?
>
> A.  No, ma'am.
>
> Q.  Have you ever been treated for drug addiction?
>
> A.  No, ma'am.

Q. All right.  Have you received a copy of the charge against you and discussed it fully with your attorney?

A. Yes, ma'am.

Q. All right.  Has anybody tried to force you to plea guilty today?

A. No, ma'am.

Q. Now, you are pleading guilty to a plea agreement and the way I understand the plea agreement is in return for your guilty plea to Count one the government is going to recommend that you receive the low end of the guidelines and if you substantially cooperate with the government they are going to ask me to go below those guidelines.  Is that the way you understand it?

A. Yes, ma'am.

Q. Did you read that plea agreement before you signed it?

A. Yes, ma'am.

Q. And also in the plea agreement you are waiving your right to appeal any sentence that I give you, do you understand that?

A. Yes, ma'am.

Q. Now, as far as your sentence goes do you understand that you are subject to a ten-year mandatory to life sentence?

A. Yes, ma'am.

Q. $4 million fine, five years supervised release and hundred dollars special assessment?

A. Yes, ma'am.

Q. Now, when I tell you that its [sic]

              mandatory I have no choice but to give
              you ten-years unless you substantially
              cooperate with the government and they
              file a motion telling me that.  You
              understand that?

    A.    Yes, ma'am.

    ***

    Q.    You have a right to plead not guilty,
              you will have a trial, the government
              would have to prove your guilt beyond a
              reasonable doubt.  At trial you would
              have the right to assistance of counsel,
              you will have the right to cross-examine
              the government witnesses.  You would
              have the right to compel witnesses on
              your own behalf, to testify for you.
              You also would have the right to choose
              to testify or not testify.  But do you
              understand give pleading [sic] guilty
              today there will not be a trial you
              understand that?

    A.    Yes, ma'am.

    Q.    And you are giving up those
              constitutional rights?

    A.    Yes, ma'am.

    Q.    Is that what you want to do?

    A.    Yes, ma'am.

(Plea Transcript, p. 2, L. 11 - p. 5, L. 21).  Following this, the Government recited the elements of the crime with which Baldwin had been charged as well as the facts that it would rely on at trial to prove his guilt (Plea Transcript, p. 5, L. 22 - p. 7, L. 10).  Following the Government's statements, the Judge against questioned Petitioner as follows:

>    THE COURT: Do you agree the government could prove those facts against you Mr. Baldwin.
>
>    A.   Yes, ma'am.
>
>    THE COURT: Okay. Then how do you plead.
>
>    A.   Guilty.
>
>    THE COURT: It's the finding of the Court in the case of Hillary Barnard Baldwin that the defendant is fully competent and capable of entering an informed plea. That the defendant is aware of the nature of the charges and the consequences of the plea. The plea of guilty is a knowing and voluntary plea supported by independent an [sic] basis in fact containing each of the he [sic] essential elements of the offense the plea is therefore accepted and the defendant is now adjudicated guilty of the offense. I just want to make sure I see you talking with your attorney. Are you comfortable with what the government said.
>
>    A.   Yes, ma'am.

(Plea Transcript, p. 7, L. 11 - p. 8, L. 2).

Looking to *Monroe* for guidance, the Court notes that Baldwin, in previous proceedings before the Court, specifically stated the following: (1) that his plea was not coerced, both in the Agreement (Doc. 21, ¶ 9) and at the time of the hearing (Plea Transcript, p. 3, LL. 16-18); (2) that he understood the nature of the charges against him (Doc. 21, ¶¶ 6-7 and p. 12; Plea Transcript, pp. 6-7); and (3) that he was aware of the direct consequences of his plea (Doc. 21, ¶¶ 10-15; Plea Transcript, p.

4, L. 5 - p. 5, L. 2). *Monroe*, 353 F.3d at 1354.  In addition to these things, the Court notes that, during the plea colloquy, Judge DuBose informed Baldwin of the rights he was waiving by pleading guilty and he stated that he understood that he was giving them up (Plea Transcript, p. 5, LL. 8-21).  Petitioner also agreed that the government could prove a set of facts which would render him guilty of the charge against him (Plea Transcript, p. 6, L. 22 - p. 9, L. 6).  Finally, it is clear that Baldwin had been informed that he faced the possibility of a sentence which exceeded ten years (Doc. 21, ¶ 10), especially since he was a career offender (Plea Transcript, p. 1, LL. 10-12, 25; p. 2, LL. 1-10).  As noted earlier, Judge DuBose found Baldwin to be "fully competent and capable of entering an informed plea [and that he was] aware of the nature of the charges and the consequences of the plea.  The plea of guilty is a knowing and voluntary plea supported by independent an [sic] basis in fact containing each of the he [sic] essential elements of the offense" (Plea Transcript, p. 7, LL. 17-22).

   After review of the pleadings of record and the arguments made, the Court concludes that Baldwin was fully informed that his prior convictions were going to be used to enhance his sentence.  The Court further finds that the record belies his assertion that there was no factual basis for the plea.  The Court finds that Petitioner's guilty plea was knowing and voluntary; any assertion otherwise is without evidentiary

support.

Petitioner has also claimed that his attorney rendered ineffective assistance. More specifically, Baldwin asserts that his attorney did not object to the enhancement of his sentence because of his prior convictions and then failed to withdraw the plea or appeal the sentence once he realized the range of his sentence (Doc. 33).

In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court defined the showing a habeas petitioner must make to prevail on an ineffective assistance claim:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the sixth amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Id.* at 687.

The Court has already found that Petitioner's assertion that his plea was unknowing and involuntary because of the enhancement of his sentence in light of his prior criminal record was not supported by the record. The claim gains no momentum dressed as an ineffective assistance of counsel claim.

16

Specifically, the Court has already determined that Baldwin was informed, at the time that he entered into his Plea Agreement, that his sentence would be, at a minimum, ten years and that his prior convictions would affect the ultimate length of it.  As Petitioner was aware of this, his attorney cannot be found to have been deficient for not telling him.  Because Petitioner cannot prove one prong of the *Strickland* analysis, it is unnecessary to analyze the second (prejudice) prong.  The evidentiary record does not support Baldwin's claim that his attorney rendered ineffective assistance.

Furthermore, pursuant to Rule 11(a) of the Rules Governing § 2254 Cases, the undersigned recommends that a certificate of appealability (hereinafter *COA*) in this case be denied.  28 U.S.C. foll. § 2254, Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.").  The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a COA.  28 U.S.C. § 2253(c)(1).  A COA may issue only where "the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2243(c)(2).

The Court has already determined, herein, that Petitioner has failed to demonstrate that any of his constitutional rights have been denied.  Therefore, Petitioner should be denied a

certificate of appealability.

## CONCLUSION

Baldwin has raised two claims in this petition; both are without merit.  Therefore, it is recommended that the petition be denied, that this action be dismissed, and that judgment be entered in favor of the Respondent, the United States of America, and against the Petitioner Hillary Bernard Baldwin.  It is further recommended that it be found that Baldwin is not entitled to a certificate of appealability and, therefore, is not entitled to appeal *in forma pauperis*.

MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

1.   **Objection**.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court.  Failure to do so will bar a de novo determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  See 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(en banc).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the

18

objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed <u>de novo</u> and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.  **<u>Transcript (applicable where proceedings tape recorded)</u>**.  Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

DONE this 8th day of April, 2010.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE
